# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

JULIAN RIGBY and
GEORGIA/FLORIDA TOBACCO
EXCHANGE, INC., itself and
d/b/a TENNESSEE VALLEY TOBACCO
SERVICES,

    Plaintiffs,

vs.

PHILIP MORRIS USA INC. and
ALTRIA CLIENT SERVICES INC.,

    Defendants.

CV 513-110

### ORDER

Presently before the Court is Defendants' Motion to Dismiss. Dkt. No. 5. Upon due consideration, Defendants' motion is **DENIED** in regard to Plaintiffs' claim for breach of contract (or promissory estoppel in the alternative). The motion in regard to the other claims is **MOOT** because Plaintiffs' request to amend the complaint is **GRANTED**. Plaintiffs have leave to amend their complaint within 21 days of this Order's filing. Defendants are permitted to file a motion to dismiss the amended complaint thereafter, if desired.

1

I. **Factual Background**[1]

  A. <u>Customary Business Relationship</u>

  Julian Rigby operated a tobacco receiving station and, until 2011, farmed tobacco. Dkt. No. 1-1 ¶ 11. For many years, Rigby, the Georgia/Florida Tobacco Exchange, Inc.,[2] and other Georgia farmers have sold tobacco to Philip Morris USA Inc. <u>Id.</u> ¶ 12. In later years, sales were made to Philip Morris's affiliate, Altria Client Services Inc. (collectively, "the tobacco buyers"). <u>Id.</u> To facilitate these sales, the tobacco buyers hired individuals to "grade" tobacco, which can range from "First Quality" (the highest grade) to "Fourth Quality" (the lowest grade). <u>Id.</u> ¶ 13.

  The grade assigned to tobacco affects the terms of an exchange between farmers and the tobacco buyers. In December of each year, the tobacco buyers customarily publish the next year's purchase price for each grade of tobacco. <u>Id.</u> ¶ 14. The

---

[1] In support of their Motion to Dismiss, Defendants have provided copies of contracts between the parties, which purportedly are at the center of this case. Dkt. Nos. 5-2 to -4. Plaintiffs argue that the Court should not consider these contracts in ruling on Defendants' Motion to Dismiss because they are incomplete and do not encompass the entirety of the contractual relationships between the parties. Dkt. No. 18, at 1-3. The Court declines to consider these documents in deciding Defendants' motion and instead will rely on the pleading. Although the Court recognizes that this necessarily forecloses many of Defendants' arguments, nothing precludes Defendants from raising them again in a later motion.

[2] The complaint never explicitly identifies the relationship between Rigby and Georgia/Florida Tobacco Exchange, Inc. However, the Georgia Secretary of State's website reveals that Rigby is the corporation's CEO and CFO. Search: Georgia-Florida Tobacco Exchange, Inc., <u>Georgia Secretary of State, Corporations Division Website</u>.

AO 72A
(Rev. 8/82)

tobacco buyers communicate the prices through a written price sheet. Id. ¶ 15.

B. Assurances and Prices for the 2010 Crop Season

In December 2009, the tobacco buyers prepared an initial price sheet for certain grades of tobacco in 2010. Id. ¶ 16. Plaintiffs allege that, soon thereafter, the tobacco buyers spoke "with representatives of a competing tobacco company, Universal Leaf," and "agreed to lower the prices [they] would offer farmers." Id. ¶ 17. Therefore, the tobacco buyers rescinded their initial price sheets and "replaced them with one containing lower prices." Id. ¶ 18. Plaintiffs claim that the tobacco buyers published the "price sheets at a time later than customary" partially because of the "negotiations with Universal Leaf regarding pricing." Id. ¶ 19.

Despite the delay in providing a price sheet, the tobacco buyers did provide certain information that farmers purportedly relied upon. For example, the tobacco buyers provided "a poundage limit" on what amount they would purchase through the receiving station. Id. ¶ 22. The tobacco buyers allocated a limit among farmers only after the farmers contracted with the tobacco buyers. Id. The limit was based on historical production. Id.

In addition, Plaintiffs claim that they sought and received assurances from the tobacco buyers that the tobacco buyers would

3

AO 72A
(Rev. 8/82)

purchase all of the tobacco that the farmers intended to grow. See id. ¶ 23. Plaintiffs claim that the tobacco buyers made such promises "consistently . . . for many years." Id. "The representations were made to Plaintiff by Defendants as well as by other agents and representations [sic.] of Defendants. Specifically, Defendants' representative, Craig Shirrah, told farmers to let the government buy this tobacco through crop insurance." Id. Plaintiffs allege that the tobacco buyers "knew that Plaintiff and other farmers were relying upon their promises in deciding to prepare their land to grow the amount of crops they stated." Id. ¶ 24.

"Even though a price sheet had not yet been issued, Plaintiffs Rigby and Georgia/Florida Tobacco Exchange and other farmers had to start preparing their land to grow the [next] year's tobacco crop." Id. ¶ 20. Preparation "included, among other things, applying certain chemicals to the land," which "prevented the land from being used to grow anything but tobacco." Id. ¶ 21. These efforts were "based upon the usual customary acts between Plaintiffs and [the tobacco buyers]." Id. ¶ 20.

C. Failure to Purchase and Alleged Price Manipulation

Despite the tobacco buyers' purported promise to buy all Plaintiffs' tobacco crop, the tobacco buyers refused and "ultimately only purchased approximately one-half of the

tobacco." Id. ¶ 25. Plaintiffs also claim that, after the 2010 tobacco harvest, the tobacco buyers instructed its graders to significantly reduce the amount of crops graded as "Third Quality," and instead graded them as "Fourth Quality." Id. ¶ 26. Plaintiffs believe that this constituted improper manipulation of the tobacco grading to avoid purchasing tobacco at a higher price, or at all. Id. ¶ 27.

D. Tennessee Receiving Facility

Finally, Plaintiffs claim that in 2010 "Defendants shutdown Plaintiffs' receiving station in Georgia." Id. ¶ 47. Afterward, "Defendants induced [Rigby] to set up a receiving station in Midway, Tennessee" to receive burley tobacco. Id. ¶¶ 47-48. Plaintiffs claim that a representative of one of the defendants, Shirrah, "required Plaintiffs to do two things outside of Defendant's contract with Plaintiffs": (1) buy a Tennessee farm "to incorporate more into the burley tobacco farming community" and (2) force "either Julian Rigby or [a person not identified elsewhere in the complaint named] Ben Swain to be in Tennessee even in off times when their receiving station is not open." Id. ¶ 49.

Through a contract between Plaintiffs and Defendants, Plaintiffs believe that they owed a "duty of absolute loyalty" to Defendants, which included "only dealing with growers who had contacts with Altria" and "using the receiving station as a

5

single purpose entity, solely for Defendant's benefit." Id. ¶ 50. In turn, "Defendant had a duty of loyalty to Plaintiffs," which purportedly was violated in 2011 when "Defendants contracted with the Tennessee Burley Cooperative to buy approximately 6 million pounds of tobacco." Id. ¶ 51. Plaintiffs believe that the "tobacco should have been purchased by Altria through Plaintiff's receiving station." Id. Furthermore, despite an obligation for "Defendant" to "give Plaintiff 30 [days'] written notice of termination" after "Defendant required Plaintiff to continue to work after the purported end of its contract with Plaintiff," this "was never done." Id. ¶ 52.

E. Damages

As a result of the aforementioned facts, Plaintiffs claim that they have been harmed, both in their capacities as farmers and tobacco receivers. Id. ¶¶ 28, 53.

## II. Procedural Background

In September 2013 Plaintiffs Julian Rigby and Georgia/Florida Tobacco Exchange, Inc. filed suit in the State Court of Bacon County against Defendants Philip Morris USA Inc. and Altria Client Services Inc. Dkt. No. 1-1. The next month, Defendants removed the case to federal court, whose jurisdiction lies in diversity. Dkt. Nos. 1; 1-9.

AO 72A
(Rev. 8/82)

Plaintiffs claim relief under four causes of action: breach of contract (or promissory estoppel in the alternative), Dkt. No. 1-1 ¶¶ 29-37; fraud (or negligent misrepresentation in the alternative), id. ¶¶ 38-44; price fixing, id. ¶¶ 45-46; and breach of duty of loyalty, id. ¶¶ 47-53. The first three arise from Defendants' failure to purchase tobacco and purported grade manipulation in Georgia, and the last arises from the events in Tennessee. Plaintiffs also seek punitive damages. Id. at 12.

In October 2013 Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 5. Their motion is fully briefed. Dkt. Nos. 1-1; 10; 12; 18.

### III. Legal Standard

When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must construe the plaintiff's complaint in the light most favorable to the plaintiff and accept all well-pleaded facts alleged in the complaint as true. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). Although a complaint need not contain detailed factual allegations, it must contain sufficient factual material "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At a minimum, a complaint should "contain either direct or inferential

7

AO 72A
(Rev. 8/82)

Plaintiffs claim relief under four causes of action: breach of contract (or promissory estoppel in the alternative), Dkt. No. 1-1 ¶¶ 29-37; fraud (or negligent misrepresentation in the alternative), id. ¶¶ 38-44; price fixing, id. ¶¶ 45-46; and breach of duty of loyalty, id. ¶¶ 47-53. The first three arise from Defendants' failure to purchase tobacco and purported grade manipulation in Georgia, and the last arises from the events in Tennessee. Plaintiffs also seek punitive damages. Id. at 12.

In October 2013 Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 5. Their motion is fully briefed. Dkt. Nos. 1-1; 10; 12; 18.

### III. Legal Standard

When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must construe the plaintiff's complaint in the light most favorable to the plaintiff and accept all well-pleaded facts alleged in the complaint as true. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). Although a complaint need not contain detailed factual allegations, it must contain sufficient factual material "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At a minimum, a complaint should "contain either direct or inferential

allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

**IV. Discussion**

A. Breach of Contract

The complaint's first cause of action is for breach of contract (or promissory estoppel in the alternative). Dkt. No. 1-1 ¶¶ 29-37. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Uhlig v. Darby Bank & Trust Co., 556 F. App'x 883, 887 (11th Cir. 2014) (per curiam) (quoting Norton v. Budget Rent A Car Sys. Inc., 307 Ga. App. 501, 502 (2010)). "A breach occurs if a contracting party fails to perform the engagement as specified in the contract." Id. (ellipses omitted) (quoting UWork.com, Inc. v. Paragon Techs., Inc., 321 Ga. App. 584, 590 (2013)). Thus, "to assert a claim for breach of contract, the party against whom the claim is brought must have been a party to the contract." Id. (quoting UWork.com, Inc., 321 Ga. App. at 590).

Of course, a prerequisite to a breach of contract is the contract's existence. At a minimum, there are four essential

AO 72A
(Rev. 8/82)

elements to a valid contract: "(1) parties able to contract; (2) consideration; (3) agreement by the parties to the terms of the contract, the essence of which is a meeting of the minds; and (4) a subject matter on which the contract can operate." Id. (citing O.C.G.A. § 13-3-1).

The complaint makes out a claim for breach of contract. Taking its allegations as true, Plaintiffs contracted with Defendants for the purchase of all Plaintiffs' tobacco crop and manipulated tobacco grading to avoid their obligations. Dkt. No. 1-1 ¶¶ 12, 18-24, 29-34. Thereafter, Defendants failed to purchase the entire crop, causing financial injury to Plaintiffs. Id. ¶¶ 25-28, 35-36. All required elements are satisfied. Therefore, as to the portion of Defendants' motion pertaining to breach of contract (and promissory estoppel in the alternative), Defendants' motion is **DENIED**.

B. The Other Claims

In addition to the claim for breach of contract, the complaint asserts claims for fraud (or negligent misrepresentation in the alternative), price fixing, and breach of duty of loyalty ("the other claims"). Dkt. No. 1-1 ¶¶ 38-53. In responding to Defendants' motion, Plaintiffs asked the Court to afford them "the opportunity to file an amended complaint to address" any deficiencies found by the Court, pursuant to Rule 15 of the Federal Rules of Civil Procedure. Dkt. No. 10, at 9-

AO 72A
(Rev. 8/82)

10; see also Dkt. No. 18, at 9. Because the complaint was drafted for state court, this request is **GRANTED**, and Defendants' motion in regard to the other claims is **MOOT**. Plaintiffs shall have 21 days from the date of this Order's filing to amend their complaint.

**V. Conclusion**

For the aforementioned reasons, Defendants' Motion to Dismiss is **MOOT IN PART** and **DENIED IN PART**. Dkt. No. 5. Plaintiffs' request to amend their complaint is **GRANTED**. Plaintiffs have leave to amend their complaint within 21 days of this Order's filing.

**SO ORDERED**, this 2ND day of July, 2014.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A (Rev. 8/82)