# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

JULIAN A. RIGBY,
GEORGIA/FLORIDA TOBACCO
EXCHANGE, INC., Itself and
d/b/a TENNESSEE VALLEY TOBACCO
SERVICES,

    Plaintiffs,

    v.

PHILIP MORRIS USA, INC. and
ALTRIA CLIENT SERVICES, INC.,

    Defendants.

CV 513-110

## ORDER

Plaintiff Julian Rigby, a tobacco grower and owner of
Plaintiff Georgia/Florida Tobacco Exchange, brings claims of
breach of contract, fraud, price fixing, promissory estoppel,
attorney's fees, and punitive damages against Defendant Philip
Morris USA, Inc. and its affiliate, Altria Client Services, Inc.
Presently before the Court is Defendants' partial motion to
dismiss Plaintiffs' first amended complaint, excepting the
breach of contract claims. Dkt. no. 23. Because Plaintiffs'
claims for price fixing and promissory estoppel for the events

AO 72A
(Rev. 8/82)

occurring in Georgia were not adequately pleaded, the Court **GRANTS in part and DENIES in part** Defendants' motion.

**FACTUAL BACKGROUND[1]**

### I. The Georgia Allegations

Plaintiff Julian Rigby owns and operates the Georgia/Florida Tobacco Exchange ("Georgia/Florida") in Alma, Georgia. Dkt. no. 22, ¶¶ 13-14. Plaintiff Rigby also grew tobacco himself until 2011. Id. ¶ 15. Plaintiff Rigby and other growers would enter into "Growers Contracts" with Defendant Philip Morris, under which Philip Morris would agree to purchase a certain amount of flue cured tobacco at certain prices for particular grades. Id. ¶¶ 17-18. The growers would also enter into such contracts with Altria Client Services, Inc. ("Altria"), an affiliate of Philip Morris. Id. ¶ 20. Plaintiff Rigby entered into growers contracts with Philip Morris each crop year from 2000 to 2012. Id. ¶ 18. He also operated Georgia/Florida as a receiving station where he and other growers would deliver their crop to be graded and delivered to Philip Morris or Altria. Id. ¶ 19.

Customarily, Defendants Philip Morris or Altria would publish "price sheets" each December or January, before the crop

---

[1] For the purposes of ruling on Defendant's partial motion to dismiss, the Court takes Plaintiffs' version of the facts as true. Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007) ("when ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true.").

season, indicating what price they would pay for certain grades of tobacco produced during the following crop season. Id. ¶ 21. Also, before the growing season, Defendants would determine how much tobacco they would purchase from Georgia/Florida, and this "poundage" was allocated among the various growers based on historical production. Id. ¶¶ 23, 33. The growers would use this information to determine how much tobacco they would grow the following year, and they would prepare their fields accordingly. Id. ¶¶ 25, 35. Particularly, these preparations would require the growers to apply chemicals on their land that would prevent anything except tobacco from growing. Id. ¶¶ 26, 36.

Each year after the growers had reaped their crop, they would bring it to Georgia/Florida to be graded by individuals employed by Defendants. Id. ¶ 27. These graders assigned grades to the tobacco ranging from first quality (the best) down to fourth quality. Id. Philip Morris or Altria would then pay the allocated price for that quality of tobacco.

Plaintiffs allege that Philip Morris and/or Altria published a price sheet reflecting the prices they would pay for the various grades of tobacco for the 2009 crop in "early 2009." Id. ¶ 28. However, "[s]ometime shortly thereafter, Defendants Philip Morris and/or [Altria] lowered the prices it would pay for tobacco, and transmitted new price sheets reflecting these lower prices. Upon information and belief, these new 'lower'

price sheets were prepared after Phillip [sic] Morris and/or [Altria] representatives spoke with representatives of a competing tobacco company, Universal Leaf." Id. ¶ 29. Plaintiff alleges that Defendants changed the price sheet twice, later than the usual time for publishing price sheets, "due in part to [their] negotiations with Universal Leaf regarding pricing . . ." Id. ¶¶ 30-33.

Based on Defendants' initial indications of how much tobacco they would purchase and how much they would pay, Plaintiff Rigby and other growers prepared their fields for those anticipated purchases. Id. ¶ 37. Plaintiffs allege that Defendants knew that they would rely on these promises. Id. However, after the price changes, Defendants allegedly only purchased about half of the tobacco that they represented they would buy before the crop season. Id. ¶ 38.

Additionally, after the crop was harvested in 2010, Plaintiffs allege that Defendants instructed the graders to "significantly reduce the amount of crops graded as Third Quality and to grade such crops as Fourth Quality." Id. ¶ 39. Plaintiffs allege that Defendants intentionally manipulated the grading process to avoid contractual obligations to purchase the tobacco. Id. ¶ 40.

AO 72A
(Rev. 8/82)

## II. The Tennessee Allegations

Plaintiffs had to shut down the Georgia/Florida receiving station in 2010. Id. ¶ 52. Plaintiffs allege that Defendants then induced Plaintiffs to establish a receiving station in Midway, Tennessee, to receive burley tobacco. Id. ¶ 43-44. Specifically, Defendants allegedly promised that Georgia/Florida's new receiving station would be Defendants' exclusive source of burley tobacco in Tennessee. Id. ¶ 50.

Plaintiffs allege that Defendants, through their agent Craig Shirrah, included two additional requirements for the Midway receiving station outside of the written contract: first, Plaintiff Rigby would have to buy a farm in Tennessee to establish his presence within the Tennessee burley farming community; second, either Plaintiff Rigby or Ben Swain (who is otherwise not mentioned or identified in the complaint) would have to be in Tennessee at all times, even when the receiving station was not open. Id. ¶ 45. Additionally, the written contract with Plaintiff Georgia/Florida required a duty of absolute loyalty from Plaintiffs, including "(a) only dealing with growers who had contracts with [Altria]; and (b) using the receiving station as a single purpose entity, solely for Defendants' benefit." Id. ¶ 46. Plaintiffs allege that this duty "created a reciprocal duty of good faith owed by the Defendants to the Plaintiffs." Id. ¶ 47. However, in 2011, Defendants

AO 72A
(Rev. 8/82)

allegedly violated this duty by purchasing about six million pounds of tobacco from the Tennessee Burley Cooperative. Id.

Plaintiffs allege that, as with the receiving station in Georgia, Defendants improperly graded the tobacco at Plaintiffs' receiving station in Tennessee. Id. ¶ 48. Additionally, Defendants failed to give Plaintiffs 30 day's written notice before terminating the contract, as the contract required. Id. ¶ 49.

Plaintiffs allege that Defendants promised that they would deal exclusively with Georgia/Florida for all of their burley tobacco purchases in Tennessee. Id. ¶ 50. Plaintiffs further allege that they relied on this promise in expending the funds necessary to establish a receiving station in Tennessee, but Defendants failed to live up to their promise. Id. ¶¶ 50-51.

## PROCEDURAL BACKGROUND

In September 2013, Plaintiffs filed suit in the State Court of Bacon County, Georgia, against Defendants. Dkt. no. 1-1. The next month, Defendants removed the case to federal court, whose jurisdiction lies in diversity. Dkt. nos. 1; 1-9.

In October 2013, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. no. 5. In responding to Defendants' motion, Plaintiffs asked the Court to afford them "the opportunity to file an amended complaint to address" any deficiencies found by

the Court, pursuant to Rule 15 of the Federal Rules of Civil Procedure. Dkt. no. 10, at 9-10; see also Dkt. no. 18, at 9.

The Court denied Defendants' motion as to the breach of contract claims, granted Plaintiffs' request to file an amended complaint, and denied as moot Defendants' motion to dismiss the remaining non-contract claims. Dkt. no. 19, pp. 9-10.

Plaintiffs have since filed an amended complaint. Dkt. no. 22. The amended complaint brings claims for breach of contract (or promissory estoppel in the alternative) for the events concerning the Georgia tobacco exchange, Dkt. no. 22, ¶¶ 52-60; fraud, id. ¶¶ 61-69; price fixing in violation of the Sherman Act, 15 U.S.C. § 1, id. ¶¶ 70-76; promissory estoppel (or fraud in the alternative) for the events concerning the Tennessee tobacco exchange, id. ¶¶ 77-83; attorney's fees, id. ¶¶ 84-85; and punitive damages, id. ¶¶ 86-88.

Defendants have filed a partial motion to dismiss Plaintiffs' amended complaint, Dkt. no. 23-1, which is presently before the Court. Their motion is fully briefed. See Dkt. nos. 23-1; 24; 26.

## LEGAL STANDARD

When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. Randall v. Scott, 610 F.3d 701, 705 (11th

Cir. 2010). Although a complaint need not contain detailed factual allegations, it must contain sufficient factual material "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

## DISCUSSION

Defendants' motion to dismiss Plaintiff's Count I breach of contract claim has already been denied. See Dkt. no. 21. This Order addresses the remaining claims as alleged in the amended complaint: Count I, promissory estoppel (alternatively to breach of contract); Count II, fraud; Count III, price fixing; Count IV, promissory estoppel or fraud, in the alternative; Count V, attorney's fees; and Count VI, punitive damages. For convenience, the Court will address the fraud claims (under Counts II and IV) and the promissory estoppel claims (under Counts I and IV) in pairs.

### I.  Fraud Claims (Counts II and IV)

Plaintiffs bring two independent fraud claims. First, Plaintiffs allege that Defendants' intentional manipulation of

the tobacco grading process at the Georgia receiving station amounts to fraud (Count II). Second, Plaintiffs allege that Defendants' promise to use Plaintiffs' Tennessee receiving station as its exclusive source for burley tobacco in Tennessee amounts to fraud (Count IV).

Plaintiffs alleging fraud under Georgia law must establish five elements: "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." Baxter v. Fairfield Fin. Servs., Inc., 704 S.E.2d 423, 429 (Ga. Ct. App. 2010).

Under Federal Rule of Civil Procedure 9(b), allegations of fraud require heightened pleading to survive a motion to dismiss. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "The 'particularity' requirement 'serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.'" W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (quoting Ziemba v. Cascade Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

AO 72A
(Rev. 8/82)

To meet Rule 9(b)'s "particularity" standard, the Eleventh Circuit generally requires that a complaint plead

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Thomas v. Pentagon Fed. Credit Union, 393 F. App'x 635, 638 (11th Cir. 2010).

Here, both claims for fraud satisfy—just barely—Rule 9(b)'s particularity requirement. For the Georgia allegations, Plaintiff Rigby clearly alleges that he entered into a "grower's contract" with Defendant Philip Morris. Dkt. no. 22, ¶¶ 17-18. Furthermore, Plaintiff Georgia/Florida alleges that it entered into a receiving station contract with Defendant Altria. Id. ¶ 20. Because Plaintiffs have identified that the statements were made in their respective contracts, they have pleaded the "precise" statements made—that the tobacco would be fairly graded—and identified the particular documents where these statements were made. That these statements were part of a contract should also place Defendants on notice of the time and location of the statements. Furthermore, Plaintiffs allege that Defendants promised to pay a certain amount for Grade Three tobacco, but intentionally misgraded the tobacco to avoid having

to meet its contractual duties. Id. ¶¶ 66-69. This allegation makes clear how Plaintiffs were misled from the statements and what Defendants gained from the fraud.

Similarly, the Tennessee allegations also satisfy the elements for pleading fraud. Even though the complaint does not directly state that he made the exclusivity promise, it is clear from the complaint that Defendants' agent, Craig Shirrah, was the person forming extra-contractual promises and obligations with Plaintiffs. Id. at ¶¶ 45. Furthermore, a false promise of exclusivity would plainly mislead the plaintiffs, and violation of that promise would benefit Defendants by providing multiple burley suppliers in one region for Defendants to negotiate with.

Defendants argue that Plaintiffs' fraud pleadings do not satisfy Rule 9(b)'s heightened pleading requirement because, Defendants say, Plaintiffs have "lumped" both Defendants together in their fraud allegations without alerting each Defendant of its specific participation in the fraud. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1381 (11th Cir. 1997) (quoting Viacom, Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 778 (7th Cir. 1994) ("[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud.")). However, while Plaintiffs do refer collectively to "Defendants Philip Morris/[Altria]" throughout their Georgia

AO 72A
(Rev. 8/82)

fraud allegations, see, e.g., Dkt. no. 22, ¶¶ 62-63, Plaintiffs'
Complaint earlier states that Defendant Philip Morris was under
contract with Plaintiff Rigby, whereas Defendant Altria was
under contract with Plaintiff Georgia/Florida. Id. ¶¶ 17-18, 20.
Thus, the fraud allegations adequately plead with specificity
which Defendant allegedly defrauded which Plaintiff.

Because Plaintiffs have adequately pleaded the fraud
allegations against both Defendants, Defendants' motion to
dismiss these claims (Counts II and IV) is **DENIED**.

## II. Price Fixing Claim (Count III)

Plaintiffs bring price fixing claims against both
Defendants in violation of the Sherman Act, 15 U.S.C. § 1. In
their motion to dismiss, Defendants argue that Plaintiffs failed
to adequately state a claim for price fixing and, alternatively,
that even a plausible claim would be barred by the statute of
limitations.

In a case brought under § 1 of the Sherman Act, a court
must determine "whether the complaint, in asserting a conspiracy
or agreement in restraint of trade, contains 'allegations
plausibly suggesting (not merely consistent with) [a conspiracy
or] agreement,' that is, whether the complaint 'possess[es]
enough heft to show that the pleader is entitled to relief.'"
Jacobs v. Tempur-Pedic Intern., Inc., 626 F.3d 1327 (11th Cir.
2010) (quoting Twombly, 550 U.S. at 557)). The court must accept

AO 72A
(Rev. 8/82)

the plaintiff's allegations as true, but may disregard the plaintiff's legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a court's two-step approach to assessing the sufficiency of an antitrust complaint includes (1) identifying legal conclusions that are not entitled to the assumption of truth; and (2) assuming the veracity of well-pleaded factual allegations and then determining whether they plausibly give rise to an entitlement to relief. See Jacobs, 626 F.3d at 1333 (quoting Iqbal, 556 U.S. at 679).

Defendants argue that Plaintiffs' price fixing claim does not adequately allege that an agreement took place. To prove that an agreement in restraint of trade exists between multiple defendants, a plaintiff must "demonstrate a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." City of Tuscaloosa v. Harcros Chems., 158 F.3d 548, 569 (11th Cir. 1998).

> [A]n allegation of parallel conduct and a bare
> assertion of conspiracy will not suffice.
> Without more, parallel conduct does not suggest
> conspiracy, and a conclusory allegation of agreement
> at some unidentified point does not supply facts
> adequate to show illegality. . . . A statement of
> parallel conduct, even conduct consciously undertaken,
> needs some setting suggesting the agreement necessary
> to make out a § 1 claim; without that further
> circumstance pointing toward a meeting of the minds,

AO 72A
(Rev. 8/82)

an account of a defendant's commercial efforts stays
in neutral territory.

Twombly, 550 U.S. at 557. Of course, plaintiffs will often be

unable to prove the existence of an express agreement, and thus

may rely on inferences from the alleged conspirators' conduct.

Seagood Trading Corp. v. Jerrico, Inc., 924 F.2d 1555, 1573

(11th Cir. 1991). At the motion to dismiss stage, "[p]laintiffs

need not allege the existence of collusive communications in

'smoke filled rooms,'" no matter how befitting such an

allegation would be in the present case, in order to state a § 1

Sherman Act claim. See In re Delta/AirTran Baggage Fee Litig.,

733 F. Supp. 2d 1348, 1360 (N.D. Ga. 2010). However, an

antitrust plaintiff must plead enough facts to state a claim for

relief that is plausible on the face of the complaint. Twombly,

550 U.S. at 556.

Here, Plaintiffs allege that Defendants published a price

sheet reflecting the prices it would pay for tobacco in 2009,

and then conspired with Universal Leaf to lower prices before

re-issuing a price sheet "in line" with prices offered by

Universal Leaf. Stripped of its conclusory allegations, though,

the amended complaint only offers the following factual

allegations: Defendants published a price sheet in early 2009;

Defendants later re-issued a price sheet with lower prices; and

the new prices were "in line" with those offered by Defendants'
competitor, Universal Leaf.

These factual allegations do not support a plausible
showing of conspiracy for a § 1 claim. Having prices "in line"
with a competitor is nothing more than parallel conduct which
cannot, on its own, support a showing of conspiracy. See
Twombly, 550 U.S. at 557 ("Without more, parallel conduct does
not suggest conspiracy . . ."). True, the fact that Defendants
allegedly reneged on their original price quotes is something
"more" than the allegation of parallel conduct. However,
Plaintiffs have not pleaded enough attendant facts regarding the
second price sheet for the Court to determine whether that
switch suggests a plausible conspiracy or merely reflects
Defendants' rational reaction to market forces. Cf. Jacobs, 626
F.3d at 1343 (noting that plaintiffs failed "to provide further
allegations that, in addition to tacitly colluding," the
defendants had "somehow signaled each other on how and when to
maintain or adjust prices" through such examples as "dates on
which distributors moved prices together, or the amounts by
which the prices moved, if in fact they did."). Specifically,
without knowing when Defendants changed their prices relative to
when Universal Leaf issued its prices, the Court has no way of
determining the plausibility of collusion. If the tobacco
companies simultaneously published their final price sheets with

the same prices, that would certainly raise suspicion. But if Defendants issued their second price sheet either significantly sooner or later than Universal Leaf published its prices, such actions would likely reflect self-interested pricing strategies on the part of the tobacco purchasers. Cf. Id. ("Here, like the Twombly court, we fail to find in the complaint facts that are suggestive enough to render a § 1 conspiracy plausible when the inference of conspiracy is juxtaposed with the inference of economic self-interest."). Thus, Plaintiffs have failed to allege facts in their amended complaint suggesting that Defendants conspired to fix prices, and Defendants' motion to dismiss the price fixing claim must be **GRANTED**.

### III. Promissory Estoppel Claims (Counts I and IV)

Plaintiffs bring promissory estoppel claims as alternatives to the Count I breach of contract claim and the Count IV fraud claim. Dkt. no. 22, ¶¶ 60, 83. Under Count I, Plaintiffs claim that they reasonably relied on the promises and representations Defendants made regarding both the amount of flue cured tobacco Defendants would purchase from Plaintiffs and the method of grading Defendants would use for the tobacco in Georgia. Id. ¶¶ 56-57. Under Count IV, Plaintiffs claim that they reasonably relied on Defendants' promises and representations that, if Plaintiffs established a receiving station in Tennessee,

AO 72A
(Rev. 8/82)

Defendants would use the station as their sole receiving station for burley tobacco in Tennessee. Id. ¶¶ 78-79.

Under Georgia law,

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Ga. Code Ann. § 13-3-44(a). To prove promissory estoppel, a plaintiff must demonstrate that "(1) the defendant made certain promises, (2) the defendant should have expected that the plaintiff would rely on such promises, and (3) the plaintiff did in fact rely on such promises to his detriment." Doll v. Grand Union Co., 925 F.2d 1363, 1371 (11th Cir. 1991). Because Plaintiffs' two promissory estoppel claims arise under different factual circumstances, the Court will discuss each in turn.

### a. Promissory Estoppel for Failure to Perform Under the Georgia Contracts

Plaintiffs' Count I promissory estoppel claim (pleaded as an alternative claim to breach of contract) concerns Defendants' alleged failure to fairly grade and buy certain amounts of flue cured tobacco from Plaintiffs, as it had agreed under the growers contract and receiving station contract. However, under Georgia law, promissory estoppel is not available as a remedy to a plaintiff seeking to enforce an underlying contract that is

reduced to writing. <u>Adkins v. Cagle Foods JV, LLC</u>, 411 F.3d 1320, 1326 (11th Cir. 2005) (citing <u>Bank of Dade v. Reeves</u>, 354 S.E.2d 131 (Ga. 1987)).

In their Response, Plaintiffs attempt to sidestep Georgia's rule precluding claims of promissory estoppel where the promise is reduced to a contract by arguing that the promise Plaintiffs detrimentally relied upon was the "promise" to pay a certain price for flue cured tobacco, as reflected in Defendants (later rescinded) price sheet. Dkt. no. 24, p. 18. However, Plaintiffs' amended complaint clearly alleges that the promises they seek to enforce under the promissory estoppel claim are those governed by the growers contracts. <u>See, e.g.</u>, <u>Id.</u> ¶ 54 ("[Defendants] intentionally manipulated the grading of tobacco to avoid its [sic] obligation to buy certain tobacco at a certain price from Plaintiffs or through [the] buying station."); ¶ 56 ("Plaintiffs relied upon Defendants' promises that Defendants would purchase an agreed upon amount of crops from Plaintiffs . . ."); ¶ 57 ("Plaintiffs further relied upon Defendants' promises that it would fairly grade Plaintiffs' tobacco . . ."); ¶ 58 ("Plaintiffs . . . have performed all of their obligations under their agreement with [Defendants]."); <u>see also</u> ¶¶ 17-20 (discussing Plaintiff Rigby's practice of entering into a "growers contract" each crop year from 2000-2012 and Plaintiff Georgia/Florida's practice of contracting with Defendants since

AO 72A
(Rev. 8/82)

2000). Therefore, Plaintiffs' alternative claim for promissory estoppel under Count I is barred by Georgia law, and Defendants' motion to dismiss this claim must be **GRANTED**.

### b. Promissory Estoppel under the Tennessee Exclusivity Agreement

Plaintiffs' Count IV promissory estoppel claim (pleaded as an alternative claim to fraud) concerns Defendants' alleged promise that it would rely exclusively on Plaintiffs' Tennessee receiving station for all of its burley tobacco purchases in Tennessee. At the motion to dismiss stage, Plaintiffs have sufficiently pleaded factual allegations to support a claim for promissory estoppel under these circumstances. First, Plaintiffs alleged that Defendants promised to deal exclusively with Georgia/Florida as its receiving station for all burley tobacco farmed in Tennessee. Dkt. no. 22, ¶ 50. Second, Plaintiffs allege not merely that Defendants should have known that Plaintiffs would rely on this promise, but that Defendants made the promise specifically to induce Plaintiffs to establish a receiving station in Tennessee. Id. ¶ 43. And finally, Plaintiffs allege that they did, in fact, undertake considerable expense in establishing a receiving station in Tennessee, in reliance on Defendants' promise. Id. ¶ 51.

Defendants attack Count IV for promissory estoppel with several arguments, none of which carries the day. First,

Defendants argue that "promissory estoppel does not apply to representations concerning the future, but to representations of past or present facts." Adkins, 411 F.3d at 1327 (citing Voyles v. Sasser, 472 S.E.2d 80, 82 (Ga. Ct. App. 1996)). However, Voyles, the Georgia case on which Adkins relies, "involved a situation in which the promises involved 'unforeseeably vague future acts.' . . . [I]f a promise comes within the terms of OCGA § 13-3-44(a), the fact that it is performable in the future does not preclude the application of promissory estoppel." Hendon Props., LLC v. Cinema Dev., LLC, 620 S.E.2d 644, 650 (Ga. Ct. App. 2005). The promise of exclusivity here is not unforeseeably vague, and thus can be the basis of a promissory estoppel claim.

Next, Defendants argue that Plaintiffs failed to allege sufficient facts demonstrating that their reliance on Defendants' promise of exclusivity was reasonable. See Abdullahi v. Bank of Am., NA, 549 F. App'x 864, 867-68 (11th Cir. 2013); Miller v. Chase Home Fin., LLC, 677 F.3d 1113, 1117 (11th Cir. 2012). The promises alleged in Abdullahi and Miller, though, are significantly weaker than the promise Plaintiffs have alleged here. In Abdullahi, the deficiency in the plaintiff's pleading was that it was apparently clear from the complaint that the defendants' agent who made the alleged promise had no authority to do so, and the plaintiff's reliance on the promise was

AO 72A
(Rev. 8/82)

therefore unreasonable. Abdullahi, 677 F.3d at 868. And in
Miller, the court simply held that it was unreasonable for the
plaintiff to expect a permanent loan modification when he was
only promised a temporary modification. Miller, 677 F.3d at
1117. Here, there is no similar defect in Defendants' alleged
promise that would render reliance on that promise unreasonable,
at least upon consideration of the amended complaint at the
motion to dismiss stage.

As a final matter, it is worth noting that Plaintiffs do
not allege in their amended complaint that the promise relied on
for Count IV's promissory estoppel claim was a term of the
contract between Plaintiffs and Defendants for the Tennessee
receiving station. Plaintiffs do allege that their contractual
"absolute duty of loyalty" "created a reciprocal duty of good
faith owed by Defendants to the Plaintiffs" which they violated
by purchasing burley tobacco from another receiving station.
Dkt. no. 22, ¶¶ 46-47. But these allegations, when read in a
light most favorable to the Plaintiffs, do not preclude the
possibility that Defendants' duty of exclusivity was based on a
promise not included in the contract. Plaintiffs' alternative
claim of promissory estoppel under Count IV, then, will survive
Defendants' motion to dismiss.

AO 72A
(Rev. 8/82)

### IV. Claim for Attorney's Fees (Count V)

Georgia Code section 13-6-11 generally disallows the expenses of litigation to be claimed as damages; "but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Ga. Code Ann. § 13-6-11. Here, Plaintiffs have specifically requested attorney's fees in their amended complaint. Plaintiffs' have alleged, in part, that Defendants knew they would not properly grade the burley tobacco in Georgia when they contracted to do so. Dkt. no. 22, ¶ 22. "Evidence that [Defendant] entered into the agreements with no present intention of keeping them [is] sufficient to authorize the charge and the recovery of attorney fees for bad faith." Gaines v. Crompton & Knowles Corp., 380 S.E.2d 498, 503 (Ga. Ct. App. 1989). Therefore, Defendants' motion to dismiss Plaintiffs' claim for attorney's fees is **DENIED**.

### V. Claim for Punitive Damages (Count VI)

Under Georgia law, "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Ga. Code Ann. § 51-12-5.1(b). Because

AO 72A
(Rev. 8/82)

Plaintiffs' fraud claims will survive Defendants' motion to dismiss, Defendants' motion to dismiss the punitive damages claim is **DENIED**.

### CONCLUSION

Defendants' motion to dismiss Plaintiffs' amended complaint is **GRANTED in part and DENIED in part**; the motion to dismiss is **GRANTED** as to Plaintiffs' claims under Count I for promissory estoppel and Count III for price fixing. However, Defendants' motion to dismiss is **DENIED** as to Plaintiffs' claims under Count II for Fraud, Count IV for promissory estoppel, Count V for attorney's fees, and Count VI for punitive damages.

**SO ORDERED**, this 19TH day of March, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA